IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Maurice A. NERNBERG et al.,

    Plaintiffs,

v.

BOROUGH OF SHARPSBURG, Pennsylvania,

    Defendant.

Civil Action No. 14-931

MEMORADUM OPINION

Conti, Chief Judge

## I. Introduction

On March 2, 2015, the court held a hearing on a motion to dismiss the amended complaint (ECF No. 24) filed by defendant Borough of Sharpsburg ("Sharpsburg"). The amended complaint (ECF No. 23) filed by plaintiffs Maurice Nernberg and Nancy Nernberg (collectively "plaintiffs") challenged the validity of a rental-housing ordinance enacted by Sharpsburg. At the hearing, the court granted in part and denied in part the motion to dismiss. The purpose of this opinion is to explain further the reasons for the court's decision, which were detailed on the record.

## II. Facts as Alleged in the Complaint

The following facts, set forth in the amended complaint, are accepted as true for the purpose of resolving the motion to dismiss. Plaintiffs are owners of a leased property in Sharpsburg, Pennsylvania, consisting of one residential and one commercial unit. (Am. Compl. ¶ 3.) Plaintiffs challenge the constitutionality of Ordinance No. 13-08 (the "ordinance") enacted by Sharpsburg in 2013. (*Id.* ¶ 4.) The ordinance regulates residential rental properties located in Sharpsburg. The "Whereas" clauses prefacing the ordinance explain that Sharpsburg officials received a disproportionate number of complaints about "unruly and disruptive conduct" at

rental properties compared to owner-occupied properties and a disproportionate number of complaints and maintenance issues in which the owner or manager of leased property does not live near Sharpsburg. (Am. Compl. Ex. A, at 1.) Despite these statements in the ordinance, Sharpsburg kept no records indicating whether properties cited for code violations are owner occupied or tenant occupied, and Sharpsburg conducted no analysis to reach the conclusions stated in the ordinance. (Am Compl. ¶ 10.)

The ordinance's stated purpose is to "protect and promote the public health, safety and welfare of [Sharpsburg's] citizens, to establish rights and obligations of Owners and Occupants relating to the rental of certain dwelling units in the Borough of Sharpsburg[,] and to encourage Owners and Occupants to maintain and improve the quality of rental housing within the community." (Am. Compl. Ex. A, at 1.) To this end, the ordinance requires owners of residential rental properties to be responsible for the conduct of their tenants. Owners and occupants of residential rental properties must follow various housing codes and abstain from disruptive or damaging activity. The ordinance requires that an owner of residential rental property must either reside within fifteen miles of Sharpsburg or appoint a manager who does. (*Id.* at 5.) All rental agreements must be in writing and a copy of the ordinance must be attached to the rental agreement. (*Id.* at 6–7.) Owners must apply for and obtain a license before entering into any rental agreement with tenants. (*Id.* at 10.) The license has a term of two years and the license fee is $60. (Am. Compl. ¶ 6; Am. Compl. Ex. A, at 11.) The licensing requirement does not apply to senior citizen housing or "convents and parish houses." (Am. Compl. Ex. A, at 11.)

The ordinance establishes "code enforcement officers," who are responsible for investigating violations of housing codes and the ordinance. (*Id.* at 2.) The code enforcement officer shall inspect each rental property at a minimum every two years. (*Id.* at 12.) The code enforcement officer will provide written notice to a landlord of code violations by tenants. (*Id.* at 7.) The owner shall take immediate steps to remedy

the violation and shall submit a written report of those steps to the code enforcement officer. (*Id.*) If the same tenant has a second violation within one year, the code enforcement officer may direct the owner to evict the tenant. (*Id.* at 8.)

An owner must promptly correct any violations after receiving notice from the code enforcement officer. (*Id.*) Sharpsburg has the authority to enter and make repairs on property if the owner fails to correct an issue after notice of the violation. (*Id.*) The cost of such repairs will be imposed on the owner. (*Id.*) The owner shall permit inspections of any premises by a code enforcement officer at reasonable times upon reasonable notice. (*Id.* at 8–9.)

Tenants are required to conduct themselves in a way that will not disturb the peaceful enjoyment of persons in adjacent or nearby dwellings. (*Id.* at 9.) This includes not engaging in "disruptive conduct." (*Id.* at 9–10.) The maximum number of persons permitted in a rental unit at one time may not exceed one person for each 150 square feet of "habitable floor space." Tenants must permit inspections by the code enforcement officer of the premises at reasonable times upon reasonable notice. (*Id.* at 10.)

Violations of the ordinance may lead to penalties. On a recommendation by a code enforcement officer, the Sharpsburg Borough Council has the authority to issue formal warnings and may suspend or revoke an owner's license, requiring the owner to take immediate steps to evict the occupants. (*Id.* at 13.) A violation of the ordinance also constitutes a summary criminal offense. (*Id.* at 17.)

Sharpsburg conducted no study or analysis indicating that tenant-occupied properties are the subject of more code violations than owner-occupied properties. (Am. Compl. ¶ 5.) Sharpsburg has no records justifying the fees imposed by the ordinance and the fees collected grossly exceed the amount necessary to enforce the ordinance. (*Id.* ¶ 26.) Owners of residential property who occupy the property are not subject to the requirements imposed by the ordinance, including being responsible for the violations of co-occupants, evicting other occupants, paying licensing fees,

having a written lease agreement, permitting inspections, or limiting occupancy to one person per 150 square feet.

### III. Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556–57) (internal citation omitted). Two working principles underlie *Twombly*. *Id.* First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. *Id.* at

679. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions.

> While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.*

## IV. Discussion

The amended complaint set forth six counts. Count 1 alleged that the licensing fee established by the ordinance "far exceed[s] the actual incremental costs of the program" and is therefore "a disguised tax" in violation of article VIII, section 1, of the Pennsylvania Constitution, which requires all taxes to be uniform. (Am. Compl. ¶ 39, ECF No. 23.) Count 2 asserted that the ordinance discriminates against "landlords, landlords residing greater than 15 miles from Sharpsburg, minorities, tenants of low income housing and non-owner occupants" in violation of the Fair Housing Act, 42 U.S.C. §§ 3601–3631. (Am. Compl. ¶ 41.) Count 3 alleged the ordinance violates the Fair Housing Act and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. §§ 951–963, by discriminating on the basis of familial status. (Am. Compl. ¶ 48.) Count 4 alleged that the ordinance is unconstitutionally vague under both the United States and Pennsylvania Constitutions because it grants enforcement officers discretion and does not adequately define standards for compliance. (*Id.* ¶¶ 51–53.) Count 5 alleged that the ordinance is unconstitutionally

vague because it does not adequately define violations. (*Id.* ¶¶ 55–56.) Count 6 alleged that the ordinance impairs contracts in violation of the United States and Pennsylvania Constitutions.

### A. Illegal Tax Claim (Count 1)

Count 1 alleged that the ordinance is a disguised tax. The Pennsylvania Constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." PA. CONST. art. VIII, § 1. Under Pennsylvania law, "municipalities, under the guise of a police regulation, cannot impose a revenue tax." *Borough of Kittanning v. Am. Natural Gas. Co.*, 86 A. 717, 717 (Pa. 1913). A license fee, such as the one imposed by the ordinance, will be found unconstitutional if the fee charged is grossly disproportionate to the cost incurred by the municipality in regulating the act or business. *Hill v. Borough of Dormont*, 494 A.2d 15, 17 (Pa. Commw. Ct. 1985).

The ordinance imposes a bi-annual inspection fee of $60 per residential unit. (Am. Compl. ¶ 6.) The amended complaint alleged that Sharpsburg incurred "no additional employees or expense" enforcing the ordinance and "the licensing proceeds far exceed the actual incremental costs of the program." (*Id.* ¶ 39.)

Sharpsburg cites *Bloomsburg Landlords Association v. Town of Bloomsburg*, 912 F. Supp. 790 (M.D. Pa. 1995), in support of its motion to dismiss. In that case, the plaintiffs challenged the licensing fee imposed by a similar rental-housing ordinance. The Bloomsburg ordinance imposed a licensing fee of $20 per occupant. *Id.* at 793. The court found that "[a] fee of $20.00 per tenant is reasonable under the circumstances to defray the record-keeping costs and administrative expenses which will be incurred in connection with enforcing [the ordinance]." *Id.* at 808. Unlike this case, however, *Bloomsburg Landlords Association* was before the court on a motion for summary judgment. The court had before it a record in which Bloomsburg provided records and financial data and estimated the cost of enforcing the ordinance based

upon past experience. *Id.* The court based its holding on a comparison of the projected revenues with the projected costs. *Id.*

This kind of information is not available to the court in deciding the present motion to dismiss. The court must accept the allegations in the complaint as true. Although there are few factual allegations, the allegation that Sharpsburg incurred no incremental costs and hired no employees is sufficient for the court to infer a plausible claim for relief under Pennsylvania law. For this reason, the court denied the motion to dismiss with respect to count 1.

### B. *Fair Housing Act Disparate Impact Claim (Count 2)*

The Fair Housing Act (as amended) prohibits, among other things, "discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). There are three kinds of claims under the Fair Housing Act: "(1) intentional discrimination claims (also called disparate treatment claims); (2) disparate impact claims; and (3) claims that the municipal authority failed to 'make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped] person[s][an] equal opportunity to use and enjoy a dwelling.'" *Lapid-Laurel, LLC v. Zoning Bd. of Adjustment*, 284 F.3d 442, 448 n.3 (3d Cir. 2002) (quoting 42 U.S.C. § 3604(f)(3)(B)).

Plaintiffs asserted a disparate impact claim. (ECF No. 27, at 2.) To establish a prima facie case for a disparate impact claim, plaintiffs must show that Sharpsburg's "action had a greater adverse impact on [a] protected group … than on others." *Lapid-Laurel*, 284 F.3d at 467. Plaintiffs argued the ordinance discriminates against "landlords, landlords residing greater than 15 miles from Sharpsburg, minorities, tenants of low income housing and non-owner occupants." (Am. Compl. ¶ 41.) None of these categories, however, is a protected group under the Fair Housing Act, which

7

protects against discrimination based upon race, color, religion, sex, familial status, or national origin.

One paragraph of the amended complaint connected the alleged discrimination to a protected group. Plaintiffs alleged in paragraph 35 that "[t]he income levels of renter and *racial makeup* of renters is such that they are more likely to have lower incomes than owners and more likely to be minorities. Therefore, the ordinance discriminates against low income and minority persons in its effect, making it more difficult for low income and minorities to lease residential housing . . . ." (Am. Compl. ¶ 35 (emphasis added).) This single mention of race in the amended complaint was conclusory. Plaintiffs argued that the factual allegations in paragraphs 10, 22, 28, 30, 31, 33, 34, 36, 41, 42, 43, and 45 support this count. These paragraphs contain facts about a lack of analysis by Sharpsburg and restrictions imposed on landlords as opposed to owner-occupants. The amended complaint contained no factual allegations supporting an inference that the ordinance caused a disparate impact based upon race in violation of the Fair Housing Act.

Plaintiffs stated in their supplemental brief that, "under the related equal protection theory, plaintiffs must allege that the defendant intentionally treated them differently from others similarly situated and that there is no rational basis for the difference in treatment." (ECF No. 27, at 3.) Plaintiffs raised the equal protection violation in their original complaint. Landlords, however, are not a suspect or quasi-suspect class. *Lopez v. City of Oil City*, Civil No. 07-206, 2008 WL 906521, at *3 (W.D. Pa. Mar. 31, 2008). The court found that the original complaint contained insufficient factual assertions for the court to infer a plausible claim that the ordinance had no rational basis. Although there are a few additional factual pleading in the amended complaint, the amended complaint is largely similar to the original complaint. Given that landlords are not a suspect class, the court does not see a basis for finding a plausible claim to relief on equal protection grounds.

The court granted the motion to dismiss with respect to count 2, without prejudice.

### C. Discrimination Based upon Familial Status in Violation of the Fair Housing Act and PHRA (Count 3)

The ordinance contains an occupancy restriction of a maximum of one person per 150 square feet:

> III. OCCUPANT DUTIES . . . .
>
> B. <u>Health and Safety Regulations</u>
>
> 1. The maximum number of persons permitted in any REGULATED RENTAL UNIT at any time shall not exceed one (1) person for each one hundred and fifty (150) square feet of habitable floor space in said REGULATED RENTAL UNIT. The maximum number of persons permitted in the COMMONS AREA of any MULTI-UNIT DWELLING at any time shall not exceed one (1) person for each fifty (50) square feet of COMMON AREA on the PREMISES.

(Am. Compl. Ex. A, at 9, ECF No. 23-1.) Plaintiffs alleged that this restriction, which does not apply to owner-occupied homes, discriminates against large or growing families. (Am. Compl. ¶ 31.)

Sharpsburg argued that the limitation on occupancy is not a limitation on the number of residents permitted to live in an apartment. (ECF No. 25, at 10.) Sharpsburg argued that, following principles of statutory construction and reading the occupancy limitation in conjunction with the words around it, "it does not purport to specify in any way how many people can live in a unit." (*Id.* at 13 n.1.) This argument is not persuasive. A limitation on occupancy is in also a limitation on the number of people who can live in a unit.

The Fair Housing Act states that "[n]othing in this subchapter limits the applicability of any reasonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling." 42 U.S.C. § 3607(b)(1). The Court of Appeals for the Sixth Circuit conducted an extensive

analysis of this provision as it applied to the occupancy ordinances of several cities similar to the one at issue in this case. *Fair Hous. Advocates Ass'n, Inc. v. City of Richmond Heights*, 209 F.3d 626 (6th Cir. 2000). One of the occupancy ordinances at issue in *Richmond Heights* required 200 square feet of habitable space for the first occupant and 150 additional square feet for each additional occupant. *Id.* at 629. The court of appeals found that in order to qualify for the § 3607(b)(1) exemption, an "ordinance must be a (1) reasonable; (2) 'local, State, or Federal restrictio[n];' (3) regarding 'the maximum number of occupants permitted to occupy a dwelling.'" *Id.* at 633 (quoting 42 U.S.C. § 3607(b)(1)). The only one of the three prongs at issue was the reasonableness of the restriction. The district court conducted a bench trial and concluded that the plaintiffs failed to meet their burden of showing that the ordinances were unreasonable. *Id.* at 634. The court of appeals concluded that the district court erred because the cities should bear the burden of proving the reasonableness of the ordinances. *Id.* at 635. Based upon the "ample evidence presented in the record," the court of appeals held that the cities met their burden of showing that the ordinances were reasonable. *Id.* The court of appeals rejected the cities' argument that the occupancy ordinances plainly fell within the exemption and no further analysis of the reasonableness of the ordinances was required. *Id.* at 636. The court noted that "Congress made clear that there is no national occupancy standard." *Id.*

Applying the analysis in *Richmond Heights* to this case, the court found that the occupancy claim states a claim under the Fair Housing Act. The exemption would need to be raised by Sharpsburg as a defense. The occupancy limitation in the Sharpsburg ordinance is not reasonable as a matter of law on its face. Determining whether the limitation is reasonable requires evidence about the particular circumstances under which the ordinance was enacted. *See id.* What was reasonable under the circumstances in *Richmond Heights* may or may not be reasonable for Sharpsburg.

The PHRA contains a similar exemption: "Nothing in this act limits the applicability of the Fair Housing Act and reasonable State or local restrictions on the maximum number of occupants permitted to occupy a dwelling or a reasonable restriction relating to health and safety standards or business necessity." 43 Pa. Stat. § 955(h)(11). As with the Fair Housing Act exemption, the PHRA requires a determination of reasonableness, and this exemption does not mean plaintiffs' claim fails as a matter of law.

The court denied the motion to dismiss with respect to the occupancy limitation in count III.

### D. Unconstitutional Vagueness (Counts 4 & 5)

Counts 4 and 5 make related claims about the vagueness of the ordinance. Count 4 alleges that the ordinance is unconstitutionally vague because it does not define the standards for a rental property to be granted a license. Count 5 alleges that the ordinance does not adequately define violations. Plaintiffs argue that since the ordinance imposes civil and criminal penalties, "it should be viewed with a heightened standard as to vagueness." (ECF No. 26, at 11.)

"'A statute is void on vagueness grounds if it: (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) authorizes or even encourages arbitrary and discriminatory enforcement.'" *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009) (quoting *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008)). Thus, vagueness attacks are based upon lack of notice. *Id.* "The inquiry is undertaken on a case-by-case basis, and a reviewing court must determine whether the statute is vague as-applied to the affected party." *Id.* "[F]acial challenges to statutes, including challenges based on vagueness, are disfavored." *Id.* "It is widely recognized … that 'vagueness claims not involving First Amendment freedoms must be examined in light of the facts of the particular case at hand and not as to the statute's facial validity.'" *Raab Family P'ship v. Borough of Magnolia*, Civil No. 08-5050, 2009 WL 361135, at *13 (D.N.J. Feb. 13,

2009) (quoting *Belle Maer Harbor v. Charter Twp. of Harrison,* 170 F.3d 553, 557 (6th Cir. 1999)). To successfully challenge the facial validity of a legislative act outside the First Amendment context, a plaintiff must demonstrate "that no set of circumstances exists under which the [legislative act] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Plaintiffs argued that sections I.B.2, I.B.4, II.I, III.F, IV, and V.D.6 of the ordinance are unconstitutionally vague. After reviewing these sections, the court cannot discern a plausible claim to relief on vagueness grounds. Sections I.B.2 and I.B.4 are definitional and are not vague as a matter of law. Section I.B.2 defines "code enforcement officer" as any duly appointed member of the Sharpsburg Office of Code Enforcement or Sharpsburg police officer. Section I.B.4 defines "disruptive conduct," and gives adequate notice of what activity is prohibited. In order for behavior to qualify as disruptive conduct, the behavior must constitute a violation of a borough ordinance or Pennsylvania criminal statute. (Am. Compl. Ex. A, at 2–3.)

Section II.I requires an owner to take steps to remedy code violations and to file a report with the code enforcement officer within twenty days after receipt of the notice. The code enforcement officer shall approve the plan "if adequate steps have been taken and the plan is adequate to address the future violations." (Am. Compl. Ex. A, at 8.) The leaves code enforcement officers with discretion to determine the adequacy of remedial steps and plans. As a court in this district noted in *Harris v. Township of O'Hara*, Civil No. 06-169, 2006 WL 3231876 (W.D. Pa. Nov. 7, 2006), "[a]s to a claim of impermissible discretion, … it is inherently impossible for zoning ordinances to expressly identify each permitted use, and it is for that reason that a degree of discretion similar to that reflected in the ordinance at issue is routine. Such discretion does not render the zoning statute/ordinance unconstitutionally vague." *Id.* at \*11. The court granted the township's motion to dismiss, and the Court of Appeals for the Third Circuit affirmed the dismissal. 282 F. App'x 172 (3d Cir. 2008). Other courts have reached similar results. *See CMR D.N. Corp. v. City of Phila.*, 829 F. Supp.

2d 290, 301 (E.D. Pa. 2011) ("A degree of discretion is necessary and is entirely consistent with the long history of land use law in Pennsylvania."); *Raab Family P'ship*, 2009 WL 361135, at *14 (finding that an ordinance was not unconstitutionally vague even though the determination about whether a building conformed to code was left to the discretion of the building inspector).

Section III.F provides that the code enforcement officer investigates alleged incidents of disruptive conduct and completes a disruptive conduct report when an incident, "in his or her judgment," constitutes disruptive conduct. (Am. Compl. Ex. A, at 10.) This section is not impermissibly vague. As discussed with respect to section II.I, in the municipal land use context, the delegation of discretion to officials does not make an ordinance unconstitutionally vague. Moreover, "disruptive conduct" is adequately defined as conduct that violates an ordinance or criminal statute.

Plaintiffs argue that section IV is vague because it does not define what criteria are necessary to obtain a license. This section lists various requirements for obtaining a license, including furnishing copies of the lease and the names of occupants and paying the license fee and any fines and costs due. This section adequately sets forth the requirements for obtaining a license.

Section V.D.6 provides that a license may be suspended, revoked, or not renewed after three violations of the ordinance or other Sharpsburg ordinances during a single license term. The ordinance states that "there need be no criminal conviction before a violation can be found to occur." (Am. Compl. Ex. A, at 14.) Plaintiffs argue that this means imprisonment can be imposed without a criminal conviction occurring. (ECF No. 26.) Plaintiffs misread the ordinance. There need not be a criminal conviction for Sharpsburg to revoke or suspend a license. In order for criminal penalties to be imposed, however, there must be a criminal conviction. Section VI.B provides:

> Any violation of this Ordinance shall constitute a summary offense punishable, upon conviction thereof by a magisterial district judge, by a fine not to exceed Six Hundred Dollars ($600.00) plus costs of prosecution or, in default of payment

of such fines and costs, by a term of imprisonment not to exceed thirty (30) days. Each day of violation shall constitute a separate and distinct offense.

(Am. Compl. Ex. A, at 17.) Section V.D.6 is not unconstitutionally vague and does not purport to authorize criminal penalties absent a criminal conviction.

The factual averments of the amended complaint did not give rise to a plausible claim to relief given the high burden of establishing the facial invalidity of the ordinance due to vagueness. The court granted the motion to dismiss with respect to counts 4 and 5.

### E. Impairment of Contracts (Count 6)

Article I, section 10 of the U.S. Constitution prohibits states from enacting any "Law impairing the Obligation of Contracts." The Pennsylvania Constitution contains a similar prohibition. PA. CONST. art. 1, § 17 ("No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed."). Pennsylvania courts have interpreted this section in tandem with the United States Constitution. *See EmergyCare, Inc. v. Millcreek Twp.*, 68 A.3d 1 (Pa. Commw. Ct. 2013).

As explained by the Court of Appeals for the Third Circuit:

> To ascertain whether there has been a Contract Clause violation, a court must first inquire whether the change in State law has "operated as a substantial impairment of a contractual relationship." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (citations omitted); *Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1243 (3d Cir. 1987) (citations omitted). If this threshold inquiry is met, the court must then determine "whether the law at issue has a legitimate and important public purpose." *Transp. Workers Union of Am., Local 290 v. Se. Pa. Transp. Auth.*, 145 F.3d 619, 621 (3d Cir. 1998). If so, the court must ascertain "whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose." *Id.* … [T]he Contract Clause only protects *existing* contractual relationships and legitimate expectations based on the law in effect *at the time of the contract* . . . .

*N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 386 (3d Cir. 2012). The amended complaint alleges that the ordinance impairs contracts by requiring owners to have a written lease, adopt the entire ordinance in the lease, enforce the ordinance, and evict tenants who violate the ordinance, among other things. (Am. Compl. ¶ 59.)

Because the Contract Clause only prohibits impairment of existing contracts, the ordinance does not violate the Contract Clause with respect to contracts entered into after Sharpsburg passed the ordinance "[i]n or about 2013." (*Id.* ¶ 4.) *See N.J. Retail Merchs. Ass'n*, 669 F.3d at 386 ("[A] preliminary injunction based on a Contract Clause violation would only apply retroactively to [gift cards] issued before the enactment of [the statute at issue]."). In other words, prospective relief is not available.

The amended complaint does not specifically identify any contract that plaintiffs entered into before the enactment of the ordinance that was allegedly impaired by the ordinance. The allegations in the amended complaint are general and conclusory. Without the inclusion of factual allegations that a specific contract was impaired, the court cannot infer the existence of a plausible claim that the ordinance substantially impaired a contractual relationship. Moreover, plaintiffs do not have standing to assert that the ordinance impaired contracts to which the plaintiffs are not a party. *See Williams v. Eggleston*, 170 U.S. 304, 309 (1898) (holding, with respect to a contention that two state acts impaired the obligation of a contract, that "[t]he parties to a contract are the ones to complain of a breach, and if they are satisfied with the disposition which has been made of it, and of all claims under it, a third party has no right to insist that it has been broken").

The court granted the motion to dismiss with respect to count 6, without prejudice.

## V. Conclusion

For the forgoing reasons and the reasons stated on the record at the hearing on March 2, 2015, the court granted the motion to dismiss with respect to counts 2, 4, 5,

and 6. These counts were dismissed without prejudice. The court denied the motion with respect to counts 1 and 3. So ordered on the record.

Dated: April 14, 2015    /s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge