THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAURICE A. NERNBERG and<br>NANCY NERNBERG,<br><br>　　　　　Plaintiffs,<br><br>　　　　v.<br><br>BOROUGH OF SHARPSBURG,<br>PENNSYLVANIA,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Civil Case No. 14-931<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

CONTI, Chief District Judge.

**I.　INTRODUCTION**

Pending before the court is the October 16, 2015, motion for summary judgment (ECF No. 45) filed by the Borough of Sharpsburg, Pennsylvania ("defendant" or "Borough"), pursuant to Federal Rule of Civil Procedure 56(a). Defendant seeks judgment as a matter of law with respect to all remaining claims[1] contained in the November 7, 2014, amended complaint (ECF No. 23) filed by Maurice A. Nernberg and Nancy Nernberg ("plaintiffs"). In their amended complaint, plaintiffs claim that Borough Ordinance No. 13-08 ("Ordinance No. 13-08") is violative of the Constitution of the United States and the Constitution of Pennsylvania, as well as relevant provisions of the Fair Housing Act, 42 U.S.C. §§ 3601 – 3631 ("FHA"), and Pennsylvania Human Relations Act, 43 Pa. Stat. §§ 951 – 963 ("PHRA"). This court exercises subject-matter jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal

---

[1] As indicated in the court's March 2, 2015, minute entry for motion hearing, and reiterated in the court's April 14, 2015, memorandum opinion (ECF No. 38) in response to defendant's motion to dismiss (ECF No. 24), Counts II, IV, V, and VI of plaintiffs' amended complaint were dismissed, without prejudice. *See* FACTUAL AND PROCEDURAL BACKGROUND, *infra*, at 2.

question jurisdiction), and over plaintiffs' state claims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction). For the reasons that follow, defendant's motion will be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are the owners of residential and commercial rental properties located within the Borough. (ECF No. 23 ¶ 3). Plaintiffs do not occupy these properties for residential or business purposes. (*Id.*). On or about October 1, 2013, the Borough adopted Ordinance No. 13-08. (ECF Nos. 50 ¶ 1; 55 ¶ 1). Ordinance No. 13-08 established that landlords – such as plaintiffs – must maintain a license to rent property in the Borough, and that the license must be renewed every two years. (ECF No. 50-4 at 6). The license requires payment of a biannual license and inspection fee to the Borough. (*Id.*). The Borough set the license fee at $60.00. (ECF No. 50-8 at 1). Ordinance No. 13-08 also established that plaintiffs could not permit more than one person per 150 square feet of living space to reside in a rental unit. (ECF No. 50-4 at 5).

The Borough began receiving payment of the new biannual license fees from property owners as early as October 2013. (ECF Nos. 50-3; 50-6 at 5). However, rental property inspections and the issuance of licenses pursuant to No. 13-08 did not begin until January 2014. (ECF Nos. 46-4 at 64; 50 ¶ 15; 50-7 at 7; 55 ¶ 15). At that time, Lou Deluca was hired by the Borough to act as the Code Enforcement Officer for inspections conducted in accordance with Ordinance No. 13-08. (ECF Nos. 46-4 at 8; 50-9 at 6). Mr. Deluca is the only Borough employee who conducts rental property inspections. (ECF No. 50-6 at 4). The Borough Utility Administrator, Barbara Ruhle, is responsible for administering the licensing program and issuing licenses. (ECF Nos. 50-6 at 3; 50-7 at 6; 50-9 at 6).

2

On June 17, 2014, plaintiffs filed a complaint against the Borough in the Court of Common Pleas of Allegheny County, Pennsylvania. (ECF No. 1-1 at 1 – 11). On July 11, 2014, the Borough removed plaintiffs' action to this court. (ECF No. 1). Plaintiffs filed an amended complaint (ECF No. 23) in this court on November 7, 2014. Following a March 2, 2015, hearing on the Borough's motion to dismiss the amended complaint, the court dismissed all but Counts I (disguised tax provision) and III (discriminatory tenancy restriction). (ECF No. 38). On May 7, 2015, the Borough replaced Ordinance No. 13-08 with new Ordinance No. 15-06 ("Ordinance No. 15-06"). (ECF Nos. 46 ¶ 15; 49 ¶ 15; 50-5). Ordinance No. 15-06 materially differs from Ordinance No. 13-08 with respect to the elimination of the restriction upon the number of people permitted to rent a property based upon the property's square footage. (ECF Nos. 50-4 at 5; 50-5 at 9).

On October 16, 2015, the Borough filed the present motion for summary judgment. (ECF No. 45). Plaintiffs filed their opposition on November 16, 2015. (ECF No. 48). The issues are fully briefed. (ECF Nos. 46 – 50, 52, 55 – 56). The time for filing responses being closed, the matter is ripe for disposition.[2]

### III. STANDARD OF REVIEW

Summary judgment is appropriate if the record shows that there is no genuine dispute with respect to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of

---

[2] On December 15, 2015, plaintiffs filed a motion to strike various submissions filed by the Borough which were beyond the scope and time periods permitted by this court's case management order (ECF No. 42) and subsequent order (ECF No. 54) extending the time for filing of a combined concise statement of facts by the Borough. That motion will be denied as moot. *See* DISCUSSION, *infra* at 14.

summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Even then, the dispute over the material fact must be genuine, such that a reasonable jury could resolve it in the nonmoving party's favor. *Id*. at 248–49.

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir.2007); *Doe v. Cnty. of Centre, Pa*, 242 F.3d 437, 446 (3d Cir.2001); *Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir.2001); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir.1999). A court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir.1998).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986). The summary judgment inquiry asks whether there is a need for trial – "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250. In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Liberty Lobby*, 477 U.S. at 248 – 49.

The burden of showing that no genuine issue of material fact exists rests initially on the party moving for summary judgment. *Celotex*, 477 U.S. at 323; *Aman v. Cort Furniture Rental*

4

*Corp.*, 85 F.3d 1074, 1080 (3d Cir.1996).  The moving party may satisfy its burden either by producing evidence showing the absence of a genuine issue of material fact or by demonstrating that there is an absence of evidence to support the nonmoving party's case.  *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) (citing *Celotex*, 477 U.S. at 325).  A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more of those elements.  *Celotex*, 477 U.S. at 322 – 23.  Once the movant meets that burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide.  FED. R. CIV. P. 56(e); see *Liberty Lobby*, 477 U.S. at 247 – 48; *Celotex*, 477 U.S. at 323 – 25.  If the evidence the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law.  *Liberty Lobby*, 477 U.S. at 249.

The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.' " *Corliss v. Varner*, 247 F.App'x 353, 354 (3d Cir.2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir.2002)).

## IV. DISCUSSION

### A. *Count I*

In Count I of plaintiffs' amended complaint, it is asserted that Ordinance No. 13-08[3] is a disguised tax provision in violation of the Pennsylvania Constitution, which states in pertinent part that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1. "[M]unicipalities, under the guise of a police regulation, cannot impose a revenue tax." *Borough of Kittanning v. Am. Natural Gas. Co.*, 86 A. 717, 717 (Pa. 1913). Plaintiffs contend that the ordinances at issue violate these principles because the licensing fees charged by the Borough are grossly disproportionate to the cost to the Borough of implementation of the ordinances. (ECF Nos. 23 at 7; 48 at 4 – 10). The Borough counters that it is entitled to summary judgment on this issue because the facts of record indicate that the licensing fees were reasonably commensurate with the cost of administering the licensing program. (ECF Nos. 47 at 4 – 11; 52 at 1 – 6).

It is well established that the power to tax is the sole province of the state General Assembly under the Pennsylvania Constitution, and in the absence of an explicit delegation of this taxing power, no municipal entity may levy a tax. *Thompson v. City of Altoona Code App. Bd.*, 934 A.2d 130, 133 (Pa. Commw. Ct. 2007) (citing *Mastrangelo v. Buckley*, 250 A.2d 447, 452 – 53 (Pa. 1969)). A licensing fee is distinguishable from a tax; a licensing fee is "a sum

---

[3] Ordinance No. 15-06 was passed by the Borough on May 7, 2015. (ECF Nos. 46 ¶ 15; 49 ¶ 15; 50-5). Plaintiffs' amended complaint was filed November 7, 2014. (ECF No. 23). Although plaintiffs integrate Ordinance No. 15-06 into their response to the Borough's motion for summary judgment (ECF No. 48), the court must note that it will not entertain any arguments specific to Ordinance No. 15-06, because "'[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'" *Amboy Bancorporation v. Bank Advisory Grp., Inc.*, 432 F.App'x 102, 112 (3d Cir. 2011) (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)). "'At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a).'" *Bell v. City of Phila.*, 275 F.App'x 157, 160 (3d Cir. 2008) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The court will recognize only the claims pertaining to Ordinance No. 13-08 and the time period in which it was in effect.

assessed for the granting of a privilege." *Id.* (quoting *Talley v. Commw.*, 553 A.2d 518, 519 – 20 (Pa. Commw. Ct. 1989)). Because a municipal entity inevitably incurs costs incident to a licensing program, those seeking the license should bear the expense. *Id.* If a licensing fee, however, is not commensurate with the expenses incurred by a municipal entity in the administration of an ordinance or licensing program, the licensing fee may be construed as a tax – "a revenue producing measure characterized by the production of a high proportion of income relative to the costs of collection and supervision." *Id.* A municipal entity cannot collect licensing fees in order to raise revenue for purposes other than the licensing program. *M&D Prop., Inc. v. Borough of Port Vue*, 893 A.2d 858, 862 (Pa. Commw. Ct. 2006) (citing *Nat'l Prop., Inc. v. Borough of Macungie*, 595 A.2d 742, 745 – 46 (Pa. Commw. Ct. 1991)).

A rental inspection ordinance revenue chart created by the Borough with respect to income generated under Ordinance No. 13-08 shows that between October 2013 and December 2013, the Borough received $37,620.00 in licensing fees. (ECF No. 50-3). For all of 2014, the Borough collected $13,620.00. (*Id.*). Between January 2015 and April 2015, the Borough collected $2,100.00. (*Id.*). As of April 10, 2015, the total revenue generated during the first two-year licensing period[4] was $53,340.00. (*Id.*). The Borough asserts that it expended $53,625.56 for the implementation of Ordinance No. 13-08 during that same period. (ECF No. 47 at 5). Plaintiffs dispute both the total revenue and total expenditure figures presented by the Borough. (ECF No. 48 at 4).

---

[4] The Borough asks the court to consider revenue generated under previous rental licensing ordinances passed prior to Ordinance No. 13-08. The court declines to do so because plaintiffs are challenging only Ordinance No. 13-08. This ordinance generated revenue from late 2013 through early 2015. Considering revenue generated by previous ordinances which involved annual license fees of $50.00 is not relevant to demonstrating the reasonableness of revenue generated under Ordinance No. 13-08. If anything, considering these ordinances would undercut the Borough's argument that it is entitled to leeway when estimating what fees would be necessary to cover the costs of implementing Ordinance No. 13-08, because the Borough had the opportunity to hone these estimates after considering revenue generated under previous ordinances.

With respect to revenue[5], plaintiffs note that Mr. Deluca testified that he anticipated inspecting 933 rental units in the Borough during the first two-year licensing period. (ECF No. 50-7 at 14). Only 928 had been inspected as of the date of Mr. Deluca's deposition. (ECF No. 50-9 at 18). Mr. Deluca believed that there could be between 15 and 50 more rental units that had not yet been inspected. (ECF No. 50-7 at 14). Assuming that there are, conservatively, only 933 rental units in the Borough, plaintiffs assert that a $60.00 license fee for each unit totals more than the $53,340.00 reported by the Borough; the Borough's actual revenue for the first two-year licensing period should be $55,980.00. (ECF No. 48 at 6).

International Code is a company which was hired to conduct all inspections under previous rental licensing ordinances, and no inspections pursuant to Ordinance No. 13-08 were conducted until January 2014, when Mr. Deluca was hired. (ECF Nos. 46-3 at 28 – 29; 48 at 7; 50-6 at 5 – 6; 55 ¶ 15). With respect to expenditures, plaintiffs contend that the $28,022.50 paid to International Code in 2013 should not be counted toward the Borough's expenditures for Ordinance No. 13-08. Additionally, $950.00 paid to Dan Glock in 2014 to complete inspection work remaining after the termination of International Code's services should also be excluded from the Borough's expenditure calculation because Mr. Glock did not conduct inspections pursuant to Ordinance No. 13-08. (ECF Nos. 48 at 7; 50-6 at 6).

Plaintiffs also claim that the $15,414.00 and $7,566.44[6] paid to Mr. Deluca in 2014 and 2015, respectively, should be prorated to reflect that he did not spend all his time inspecting

---

[5] To the extent that plaintiffs seek to include fines collected pursuant to Ordinance No. 13-08 as additional revenue (ECF No. 50 ¶¶ 34 – 35), the court notes that a "fine or penalty differs substantially from a license fee." *Mastrangelo*, 250 A.2d at 464. "[T]he primary purpose of a fine or a penalty is twofold: to punish violators and to deter future or continued violations." *Id.* "[T]he amount of the fine can be raised to whatever sum is necessary to discourage future or continued violations," and need not be commensurate with the costs of enforcing an ordinance if that amount does not discourage violations. *Id.* Fines collected by the Borough pursuant to Ordinance No. 13-08 are not "revenue" for purposes of determining the propriety of the Borough's license fee.
[6] Plaintiffs double this total in their expenditures calculation to account for the likely cost of Mr. Deluca's salary for the entirety of 2015. (ECF Nos. 48 at 8; 50-6 at 7). The necessity of such an assumption is questionable considering

rental properties in accordance with Ordinance No. 13-08, but that Mr. Deluca also conducted between 60 and 70 inspections for new home sales during that period. (ECF Nos. 48 at 7 – 8; 50-7 at 14 – 15). Plaintiffs state that because rental inspections constituted only 92%[7] of Mr. Deluca's total workload, the Borough should only be able to claim 92% of his salary as expenditures related to Ordinance No. 13-08. (ECF No. 48 at 7 – 8). With the above adjustments to the Borough's list of expenditures, the total expenditures related to Ordinance No. 13-08 – including minor, incidental costs such as office supplies – should be no more than $29,610.50. (ECF No. 48 at 8). Plaintiffs project that this results in net revenue of $26,369.50 for the first two-year license period. (ECF No. 48 at 8). As a result, plaintiffs contend that the Borough's income generated under Ordinance No. 13-08 is grossly disproportionate to the costs of implementation of the licensing program.

In cases like this one, "'[o]rdinances are presumed to be constitutional, and a heavy burden is placed on a person who challenges the constitutionality of an ordinance.'" *Crews v. City of Chester*, 35 A.3d 1267, 1270 n. 6 (Pa. Commw. Ct. 2012) (quoting *Commw. v. Asamoah*, 809 A.2d 943, 945 (Pa. Super. Ct. 2002)). It is a claimant's burden to demonstrate that an ordinance is unconstitutional because of an unreasonable license fee. *Thompson*, 934 A.2d at 133 (citing *Hill v. Borough of Dormont*, 494 A.2d 15 (Pa. Commw. Ct. 1985); *Stark v. Commw.*, 494 A.2d 44, 45 (Pa. Commw. Ct. 1985)). "'[M]unicipalities are afforded reasonable latitude in fixing license fees to cover the cost of enforcement, and all doubts should be resolved in favor of

---

that plaintiffs only challenged Ordinance No. 13-08 in their amended complaint, and Ordinance 15-06 came into effect on May 7, 2015. (ECF Nos. 46 ¶ 15; 49 ¶ 15; 50-5).

[7] Plaintiffs base this percentage upon 889 completed rental inspections over the first two-year license period, during which period Mr. Deluca completed an estimated 70 non-rental inspections on behalf of the Borough. (ECF No. 50 ¶¶ 37, 40, 45 – 46). The record, however, reflects that Mr. Deluca actually completed 928 rental inspections as of the date of his deposition, and Mr. Deluca testified that he inspected between 60 and 70 non-rental properties. (ECF Nos. 50-7 at 13 – 15; 50-9 at 18).

9

the reasonableness of the fee.'" *Id.* (citing *Stark*, 494 A.2d at 45). Despite the latitude afforded municipalities, a reasonable jury could conclude that plaintiffs met that burden.

In response to plaintiffs' revenue arguments, the Borough disputes that there are in fact 933 rental units or that the Borough collected fees for 933 rental units by the end of 2015. (ECF No. 55 ¶ 33). The Borough asserts that its revenue estimate was accurate through April 10, 2015. (ECF Nos. 55 ¶ 33; ECF No. 50-3). Plaintiffs' figures were derived from the deposition testimony of, and a document created by, Mr. Deluca (ECF No. 50-9 at 18); therefore, plaintiffs' revenue projections create issues of fact and credibility that must be resolved by a jury.

In response to plaintiffs' expenditure arguments, the Borough argues that not all expenditures related to the licensing program were enumerated on the Borough's rental inspection ordinance revenue chart. (ECF No. 47 at 6 – 7). The Borough notes that Barbara Ruhle and Treasurer Roxane Magnelli both spent time administering Ordinance No. 13-08. (*Id.*). This argument is unavailing because the Borough did not attempt to quantify the cost of Ms. Ruhle or Ms. Magnelli's work.[8]

The Borough admits that Mr. Deluca was solely responsible for inspecting rental units for the first two-year licensing period under Ordinance No. 13-08. (ECF No. 55 ¶ 15). Viewed in the light most favorable to plaintiffs, the court finds that a reasonable jury could conclude that the $28,022.50 paid to International Code in 2013 to conduct rental inspections pursuant to prior,

---

[8] While plaintiffs bear the ultimate burden of adducing evidence sufficient to persuade a jury that the Borough's licensing fee was unconstitutional, it was the Borough's responsibility to respond to plaintiffs' discovery request regarding the work done by Ms. Ruhle and Ms. Magnelli unless it could demonstrate a lack of relevance or lack of reasonable particularity in plaintiffs' request. *In re Milo's Kitchen Doc Treats Consol. Cases*, 307 F.R.D. 177, 179 (W.D. Pa. 2015) (citing Fed. R. Civ. P. 26(b)(1),(2); 34(b)(1)(A)). The Borough failed to provide any evidence that either Ms. Ruhle or Ms. Magnelli spent quantifiable time administering Ordinance No. 13-08. (ECF Nos. 46-1 at 4, 16; 48 at 6). The Borough clearly did not believe that this information was irrelevant, or that plaintiffs' request lacked particularity; it provided a thorough breakdown of other costs allegedly associated with Ordinance No. 13-08. The Borough also admits that it was in error not to include the information. (ECF No. 55 at 9). For purposes of summary judgment, the court must construe the evidence of record in the light most favorable to plaintiffs, and must assume that Ms. Ruhle and Ms. Magnelli had no quantifiable impact upon the cost of administering Ordinance No. 13-08.

unchallenged rental ordinances should not be counted as an expenditure related to implementation of Ordinance No. 13-08. A reasonable jury could come to the same conclusion regarding inspections conducted by Mr. Glock and exclude payments to him in 2014 from the Borough's expenditures related to Ordinance No. 13-08.

With respect to plaintiffs' contention that Mr. Deluca's salary should be prorated to distinguish between Borough expenditures related to Ordinance No. 13-08 and expenditures related to other ordinances, the Borough claims only that Mr. Deluca may have done fewer than 70 non-rental inspections (ECF No. 55 ¶ 37) and reaffirms its original expenditure calculation of $53,625.56. (ECF No. 55 ¶¶ 47, 66). Based upon the record before the court, plaintiffs adduced sufficient factual matter to create a genuine issue about whether all expenditures related to Mr. Deluca's services should properly be counted toward the cost of implementing Ordinance No. 13-08.

When scrutinizing the assessment of a fee by a municipal entity in return for the issuance of a license, courts look to whether the fee is "reasonably proportional" to the costs of the licensing program. *M&D Prop., Inc.*, 893 A.2d at 862 (citing *Nat'l Prop., Inc.*, 595 A.2d at 745). While the Borough should be provided reasonable latitude in anticipating the expense of its licensing program, *Thompson*, 934 A.2d at 133, when the facts advanced by plaintiffs are viewed in the light most favorable to them as the nonmoving parties, the Borough's revenues of $55,980.00 over expenditures of $29,610.50 raise issues of fact with respect to proportionality which must be resolved by a jury. A reasonable jury could find that a $26,369.50 profit – nearly as large as the Borough's expenditures – is so high relative to the cost of implementing Ordinance No. 13-08 as to constitute a tax under relevant state law. *Thompson*, 934 A.2d at 133.

Under these circumstances, summary judgment in favor of the Borough with respect to the claims advanced in Count I must be denied.

### B. *Count III*

In Count III of plaintiffs' amended complaint, it is argued that Ordinance No. 13-08 violated the FHA and PHRA due to a restriction placed upon the number of individuals permitted to occupy a rental property based upon square footage. Plaintiffs claim that there is no basis for this tenancy restriction, and that Ordinance No. 13-08 constitutes discrimination in housing by reason of familial status, because Ordinance No. 13-08 affected landlords and tenants differently than owner-occupants and homeowners. (ECF No. 23 at 8 – 9).

In its motion, the Borough argues only that it is entitled to summary judgment on the FHA and PHRA claims in Count III, because the Borough's decision to voluntarily omit the tenancy restriction from Ordinance No. 15-06 moots plaintiffs' claim. (ECF Nos. 47 at 3 – 4; 52 at 5 – 7). While plaintiffs concede in response that they have received the equitable relief sought in their claims[9], they argue that their ongoing claims for damages and attorney fees and costs related to the tenancy restriction preclude the court from finding their FHA and PHRA claims to be moot. (ECF No. 48 at 3 – 4). Plaintiffs rely, in part, upon the "catalyst approach" as justification for their position. (*Id.* at 4). The Borough contends that the "catalyst approach," or "catalyst theory," is not applicable.[10] (ECF Nos. 47 at 3 – 4; 52 at 5 – 7).

---

[9] "The Nernbergs admit that Ordinance 15-06 removed the complained of restriction [sic] thus, they obtained their equitable relief." (ECF No. 48 at 3 n. 2). "Any equitable relief sought by the Nernbergs is moot." (*Id.* at 3).
[10] The United States Supreme Court has held that the catalyst theory "is not a permissible basis for the award of attorney's fees" pursuant to the FHA. *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 610 (2001). If a plaintiff has not obtained judgment on the merits of his or her claim, or has not obtained a court-ordered consent decree, the fee-shifting provision of the FHA has been interpreted to preclude the award of attorney's fees and costs when a defendant voluntarily ceases to engage in the conduct at issue because the plaintiff is not a prevailing party for FHA purposes. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Texas State Teachers Assn. v. Garland Independent Sch. Dist.*, 489 U.S. 782, 791 (1989)). The court need not further entertain this issue, because plaintiffs' legal claims are not moot and discussion of the catalyst theory would not affect the court's disposition of the present motion. *See* DISCUSSION, *infra* at 12 – 14.

The United States Supreme Court has held that "'[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 609 (2001) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The court notes that the Borough made no explicit assurances that the tenancy restriction at issue could not be re-implemented in the future. Even if the court were to find that the circumstances of this case indicate that a future reoccurrence is not reasonably likely, it is also well settled that when a claimant has "a cause of action for damages, a defendant's change in conduct will not moot the case." *Buckhannon Bd.*, 532 U.S. at 608 – 09; *Khodara Envtl., Inc. ex rel. Eagle Envtl. L.P. v. Beckman*, 237 F.3d 186, 196 (3d Cir. 2001). *See also Freedom from Religion Found., Inc. v. Connellsville Area Sch. Dist.*, 127 F.Supp.3d 283, 300 (W.D. Pa. 2015) (quoting *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 217 (3d Cir. 2003)) ("[C]ase not moot where plaintiffs sought 'nominal damages, presumed damages, and/or compensatory damages' and 'punitive damages.'").

A review of the amended complaint reveals that in Count III, plaintiffs ask the court to "enjoin the enforcement of the Ordinance and require the Borough to refund all illegally collected taxes, [and] pay the Plaintiffs' reasonable attorney fees and costs and such other monetary and nonmonetary relief as the Court deems appropriate."[11] (ECF No. 23 at 7, 9). This

---

[11] 42 U.S.C. § 3613(c) dictates the relief available to a party filing a claim under the FHA; specifically:

(1) In a civil action under subsection (a) of this section, if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d) of this section, may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary

prayer for relief not only includes a request for specified compensatory damages in the amount of the allegedly improper license fees charged under Ordinance No. 13-08, but also for other monetary relief as deemed appropriate by this court. The court notes that the Borough did not argue that it is entitled to summary judgment with respect to plaintiffs' ability to demonstrate the elements of their FHA and PHRA claims; the Borough only argued for a finding of mootness.[12] The court will deny summary judgment in favor of the Borough with respect to the claims set forth in Count III, because while plaintiffs' claim for equitable relief is admittedly moot, their legal claims for damages are not moot.

    C. *Motion to Strike*

Plaintiffs move for the court to strike the Borough's December 15, 2015, Response to Plaintiffs' Statement of Material Fact (ECF No. 55) and December 15, 2015, Reply to Plaintiffs' Response to Defendant's Statement of Material Facts (ECF No. 56) as untimely filed. (ECF No. 57). The motion to strike will be denied as moot because the court did not rely on those submissions in determining that defendant's motion for summary judgment should be denied. *Foster v. Kraft Foods Global, Inc.*, 285 F.R.D. 343, 350 (W.D. Pa. 2012).

---

    restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).

    (2)    In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person.

[12] In order to receive attorney's fees and costs, § 3613(c)(2) of the FHA requires plaintiffs to have "prevailed" or "substantially prevailed" such that they "'secured a material alteration of their legal relationship'" with the Borough. *Litgo N.J., Inc. v. Comm'r N.J. Dep't of Envtl. Prot.*, 725 F.3d 369, 389 (3d Cir. 2013) (quoting *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 486 n. 12 (3d Cir. 2011)). Two circumstances under which a party may be considered to have prevailed for FHA purposes have been identified: (1) a judgment on the merits; or (2) a court ordered consent decree. *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 228 (3d Cir. 2011) (citing *Buckhannon Bd.*, 532 U.S. at 604). Should plaintiffs succeed in demonstrating at trial that Ordinance No. 13-08 violated the FHA and PHRA, they would be entitled to attorney's fees and costs, in addition to the compensatory damages sought – i.e the licensing fee. *See Farrar v. Hobby*, 506 U.S. 103, 112 – 13 (1992) ("A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay.").

## V. CONCLUSION

Based upon the foregoing analysis, plaintiffs adduced sufficient evidence to establish a genuine issue of material fact with respect to claims in Count I of their amended complaint. While the equitable relief sought by plaintiffs under Count III of their amended complaint was obtained, their legal claim for damages precludes a finding of mootness, and summary judgment cannot be granted in favor of the Borough with respect to the claims asserted in Count III. Accordingly, defendant's motion for summary judgment (ECF No. 45) is denied.

An appropriate order will be entered.

<u>s/ Joy Flowers Conti</u><br>
Joy Flowers Conti<br>
Chief United States District Judge

Dated: June 28, 2016
cc/ecf: All counsel of record